**SWIGER, Appellant,**

v.

**KOHL'S DEPARTMENT STORE, INC., et al., Appellees.**

[Cite as *Swiger v. Kohl's Dept. Store, Inc.,* 191 Ohio App.3d 629, 2010-Ohio-6230.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23713.

Decided Dec. 17, 2010.

Behnke, Martin & Schulte, L.L.C., Richard W. Schulte, and Stephen D. Behnke, for appellant.

Smith, Rolfes & Skavdahl Co., L.P.A., Thomas Glassman, and Matthew Dougherty, for appellees.

BROGAN, Judge.

{¶ 1} Carmela Swiger appeals from the judgment of the Montgomery County Common Pleas Court in favor of Kohl's Department Store, Inc. Swiger brought a premises-liability action against Kohl's for an injury she suffered when she fell outside the entrance to Kohl's Department Store in Kettering, Ohio. The trial court granted summary judgment to Kohl's, and this appeal followed.

{¶ 2} Swiger left Kohl's Department Store on the afternoon of April 14, 2006, and began walking toward her car. Swiger stated in her deposition that as she walked out of the store, she stopped to let cars go by in the parking lot. She testified that as she stepped down at the curb, her right foot caught on something and she went down on her right knee and wound up lying in the parking lot. She testified that she was carrying her purse and a shopping bag when she fell and that she was wearing small heels. She discovered that she had fallen in a divot in the curb where the sidewalk and curb meet. She said that a gentleman who was waiting on his wife helped her get up and return to the store. She stated that she was looking out at the parking lot at cars when she fell. Later Swiger underwent surgery for a torn anterior cruciate ligament in her knee resulting from her fall.

{¶ 3} In granting summary judgment, the trial court held that Kohl's had no duty to protect Swiger from an open and obvious danger. The trial court noted that photographs of the site where Swiger fell revealed that the sidewalk was crumbling four to five inches deep and six to ten inches across. The court noted

that the vehicle traffic in the area was what would normally be experienced by a shopper and would not constitute "attendant circumstances" that would excuse her failure to observe the danger presented by the divot in the curb.

{¶ 4} Swiger raises three assignments of error. In the first, she claims that the trial court erred when it refused to consider portions of her affidavit that she filed to clarify her previous deposition testimony. In her deposition, Swiger testified that the photographs attached to her deposition were accurate, that she saw the "big divot" in the curb after she fell, that the traffic for which she waited was limited to a "couple of cars," and that after those cars passed she did not see anybody. In her later affidavit, Swiger stated that the photographs did not 100 percent accurately represent the defective portion of the sidewalk as it appeared to her on the day she fell. She stated that the photographs seemed to use shadows for exaggerated effect and appeared to have been taken at close range. She also stated in her affidavit that there were multiple cars in front of her and they appeared to be traveling at a faster-than-usual rate of speed for vehicles in a parking lot. The trial court found that the statements in Swiger's affidavit contradicted her deposition testimony. The court noted that Swiger's deposition testimony painted a different picture "than of a customer stopping to let a couple of cars pass before she entered the parking lot."

{¶ 5} " '[W]hen an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition *nor offers a reason* for the contradiction in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment.' " (Emphasis added.) *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶ 29, quoting *Lemaster v. Circleville Long Term Care, Inc.* (Feb. 22, 1988), Pickaway App. No. 87 CA 2, 1988 WL 17187, *3.

{¶ 6} We agree with the trial court that Swiger's affidavit statement that there were multiple cars in front of her conflicts with the words "couple of cars" used in her deposition. We agree, however, with the appellant that her statement that the cars were traveling at a faster rate than usual does not contradict anything she stated in her deposition. Swiger's statement that the photographs were taken at a close angle does not contradict anything she said in her deposition, and in any event it is obvious that the photographs were taken at close range. On the other hand, Swiger should have told counsel at her deposition that she thought the photographs did not accurately depict the scene she saw because of the shadows producing a different effect. Swiger's statement that she would not have been able to see the large divot even if she had been looking where she was going was properly stricken as argumentative. The appellant's first assignment of error is sustained in part.

{¶ 7} In her second assignment of error, Swiger argues that the trial court erred in finding that the divot in the sidewalk curb was an open and obvious danger. In her third assignment of error, she argues that even if the divot was an open and obvious defect, a jury could conclude that attendant circumstances prevented the danger from being open and obvious.

{¶ 8} In Ohio, the rule relieving a store owner from liability to business invitees for open and obvious dangers is rooted in the case of *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus. The rule provides that an owner or occupier of land owes no duty to warn invitees of open and obvious dangers on the property. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. Its application has been limited generally to cases in which it is held that because of invitees' appreciation of the related dangers, owners and occupiers of land owe no duty to remove or warn them of natural accumulations of ice and snow on sidewalks or in parking lots. See *Brinkman v. Ross* (1993), 68 Ohio St.3d 82, 83–85, 623 N.E.2d 1175. The rationale is that an open and obvious danger itself serves as a warning and that "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504.

{¶ 9} In *Cash v. Cincinnati* (1981), 66 Ohio St.2d 319, 20 O.O.3d 300, 421 N.E.2d 1275, the Ohio Supreme Court held that reasonable minds could differ whether a 12–to–14–inch–wide, one-and-one-half-inch-deep excavation extending into the width of a crosswalk in a heavily pedestrian-traveled section of the city was so substantial that the defect rendered the crosswalk unsafe for travel in the usual and ordinary mode.

{¶ 10} A pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not as a matter of law required to look constantly downward. *Grossnickle v. Germantown* (1965), 3 Ohio St.2d 96, 32 O.O.2d 65, 209 N.E.2d 442. In this matter, the defect was at the curb and would not be apparent until Swiger reached it. Just prior to that point, Swiger testified, she looked into the parking lot to observe traffic before entering the lot.

{¶ 11} A jury could reasonably find that Swiger exercised reasonable care for her own safety in approaching the curb and that the defect in the curb rendered the sidewalk unsafe for pedestrian travel in the usual and ordinary mode. The jury could reasonably find that the defect in the curb was not an open and obvious defect. A jury could also conclude that the defect in the curb was present long enough for Kohl's to have repaired it. The appellant's second and

third assignments of error are sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

FROELICH, J., concurs.

DONOVAN, J., dissents.

FROELICH, Judge, concurring.

{¶ 12} I concur.

{¶ 13} If the defect or anomaly, without being hidden or concealed from view, is trivial, slight, or insubstantial, then the area is in reasonably safe condition for travel and the premises' owner has no liability. See, e.g., *Cash v. Cincinnati* (1981), 66 Ohio St.2d 319, 20 O.O.3d 300, 421 N.E.2d 1275.

{¶ 14} If the defect or anomaly, without being hidden or concealed from view, is large enough to be open and obvious, the premises' owner has no duty and no liability. See, e.g., *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504.

{¶ 15} Apparently, like Goldilocks, only when the anomaly or defect is "just right" is there potential liability. This is a close case, but that's what juries are for.

DONOVAN, Presiding Judge, dissenting.

{¶ 16} I disagree. I would affirm the judgment of the trial court. First, in my view, the trial court correctly refused to consider portions of appellant's postdeposition affidavit. The area in which appellant fell was not hidden or artificially concealed. The open-and-obvious doctrine bars recovery in this case, as the size and configuration of this deteriorating curb was readily discoverable and observable. Swiger's concerns about the pictures do nothing to mitigate the openness and obviousness of the curb on the day of the accident.

{¶ 17} The *Cash* and *Grossnickle* cases cited by the majority involve municipalities, attendant circumstances, and the "two-inch rule," which absolves municipalities from liability as a matter of law where deviations in pavement height constitute expected and slight defects. The two-inch-rule analysis is antithetical to and distinct from the open-and-obvious doctrine. The two-inch-rule cases generally address what is a reasonably safe condition for municipal sidewalks as opposed to the question of what dangers are so open and obvious that an ordinary person would be able to avoid them on her own.

{¶ 18} I would affirm.